# IN THE SUPREME COURT OF TEXAS

══════════

No. 19-0671

══════════

IN RE CORPUS CHRISTI LIQUEFACTION, LLC, RELATOR

══════════════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

══════════════════════════════════════

**PER CURIAM**

The boundary between Nueces County and San Patricio County runs along the northern shoreline of Corpus Christi Bay. *In re Occidental Chem. Corp.*, 561 S.W.3d 146, 152 (Tex. 2018) (orig. proceeding). The submerged area is in Nueces County. For several years, both counties have taxed structures that are built on land in San Patricio County and extend out over the water into Nueces County. "Taxpayers have paid millions of dollars in taxes on the same property to each county. Barred by immunity from suing the counties, taxpayers' only remedy has been to file tax protest suits year after year against each county to preserve their right to a refund whenever it is determined which county lack[s] the authority to assess the taxes." *Id.* at 150. In 2017, the Legislature enacted Section 72.010 of the Local Government Code, which allows taxpayers in that situation to sue in this Court for relief.[1]

---

[1] Section 72.010 is a bracket bill that applies only to Nueces County and San Patricio County. *See* TEX. LOC. GOV'T CODE § 72.010(b). Subsections (c)–(e) provide:

>    (c)    If, as a result of disputed, overlapping, or erroneously applied geographic boundaries between like taxing units, multiple like taxing units have imposed ad valorem taxes on the same property, the property owner may file suit in the supreme court to:

The very next year, Occidental Chemical Corp. ("Oxy") did so. In *In re Occidental Chemical Corp.*, we held that "[t]he common law . . . supports treating docks, piers, and similar permanent facilities that are connected to the mainland of San Patricio County as a part of that county" and that the "taxes owed by Oxy on its Piers [were] due San Patricio County, not Nueces County." 561 S.W.3d at 165. We "direct[ed] the Nueces County Appraisal District to withdraw and cease from issuing tax assessments to Oxy for its Piers and other facilities which we [had] held to be part of San Patricio County." *Id.*

We noted that "[o]ther taxpayers [were] in the same predicament" as Oxy and pointed to an amicus brief filed by Corpus Christi Liquefaction, LLC ("CCL"). *Id.* at 153 & n.28; *see also id.* at 159 & n.70. On August 5, 2019, CCL petitioned the Court for the same relief we granted Oxy. CCL named Nueces County and the Nueces County Appraisal District (collectively, "the Nueces Parties") as the real parties in interest.[2] We requested and received a response from the Nueces Parties, to which CCL has replied. The record consists of a few attachments to the filings.[3]

---

<div style="padding-left:2em">

(1) establish the correct geographic boundary between the taxing units; and

(2) determine the amount of taxes owed on the property and the taxing unit or units to which the taxes are owed.

(d) The supreme court has original jurisdiction to hear and determine a suit filed under Subsection (c) and may issue injunctive or declaratory relief in connection with the suit.

(e) The supreme court shall enter a final order determining a suit filed under Subsection (c) not later than the 90th day after the date the suit is filed.

</div>

[2] CCL designated the Chief Appraiser for the Nueces County Appraisal District and the Nueces County Tax Assessor–Collector as respondents.

[3] These are: a CCL plant survey; a news article from the *Corpus Christi Caller Times*; a report of the Perryman Group on the anticipated economic impact of CCL's plant; the Nueces County Appraisal District's 2017–2019 assessments and appraisal review board orders affirming the assessments; CCL's protests of the 2017–2019 assessments; an appraisal review board hearing transcript involving another taxpayer, voestalpine Texas, which has filed an amicus

The material facts are undisputed. In 2015, CCL began construction of a massive natural gas liquefaction and export facility on the northern shore of Corpus Christi Bay. The first phase of the project has been completed; a second phase remains under construction. The facility is built on land in San Patricio County, with docks stretching out into the La Quinta Channel of the Bay, which is in Nueces County. The economic and employment consequences of the project will have a significant impact on the counties' tax bases.

Taxes on CCL's facility are assessed by taxing units in both Nueces County and San Patricio County based on valuations by their respective appraisal districts. Before 2017, CCL paid the small amount of double taxes without protest. In 2017, the Nueces County Appraisal District's valuation increased to $4,475,000, and in 2018, to $81,574,640. CCL filed suits protesting taxes in both counties for those years, and those suits remain pending. CCL has never paid taxes to Nueces County because of a tax-abatement agreement permitted by statute, TEX. TAX CODE §§ 312.001–.403, but that agreement is for only a temporary abatement in payment, not an elimination of the tax assessments. CCL has paid taxes to other taxing units in Nueces County.

CCL asserts in its petition that it is being taxed in both Nueces County and San Patricio County on the same property, just as Oxy was. But since the petition was filed, the situation has changed somewhat. The Nueces Parties now tell us in their response:

> Current Appraisal District records . . . reflect that CCL is being assessed *zero dollars* in ad valorem taxes on its La Quinta Channel facility by any taxing unit in Nueces County for 2018 and 2019. . . . Additionally, under a Tax Abatement Agreement between Nueces County and CCL, it does not yet owe—and has not paid—taxes to Nueces County on the facility.

brief; a summary of 2019 taxes due various taxing authorities on CCL's facility; and a tax-abatement agreement between Nueces County and CCL.

Resp. to Pet. for Writ of Mandamus at 7. The Nueces Parties note that CCL has claimed that it paid taxes to the Corpus Christi Independent School District, a taxing unit in Nueces County. "Nonetheless," they add, "it is the Appraisal District's understanding that taxing units in Nueces County are currently refraining from taxing the facility and some units will be issuing refunds to the extent taxes were paid in tax years 2018 and 2019." *Id.* at 7 n.3. The Nueces Parties say nothing about CCL's 2017 taxes, and though the Appraisal District's records show CCL's facility valued at $0 for 2018 and 2019, they also still show a $4,475,000 value for 2017.

In reply, CCL acknowledges that "[t]he Appraisal District zeroed out the value [of CCL's facility] on the appraisal rolls as late as ten days after CCL brought this action. . . . It is undisputed, therefore, that the appraisal rolls *currently* list CCL's facility at zero dollars." Reply in Supp. of Pet. for Writ of Mandamus at 1–2. But CCL insists, and the Nueces Parties have not denied, that the Appraisal District's actions do not forestall its return to the higher values. CCL has neither confirmed nor denied payment of taxes to taxing units other than Nueces County nor whether it has or will receive any refunds. CCL argues that the Appraisal District's changes in its tax rolls should not suggest that Nueces County no longer claims authority to tax CCL's facility because the tax-abatement agreement confirms that it does. The Nueces Parties respond that in the agreement, CCL has acknowledged Nueces County's taxing authority over its facility.

CCL contends that its situation is identical to Oxy's and that the Nueces Parties are simply refusing to follow our decision in *Occidental*. The Nueces Parties argue that CCL's massive plant and docks are so different from Oxy's piers that *Occidental*'s rationale and ruling do not apply. The Nueces Parties also assert—though restrictions on the number and length of filings at this stage do

4

not permit them to argue—that to apply *Occidental* to CCL's facility would violate the federal and state constitutional rights of Nueces County and its residents.

But we must first determine whether we have jurisdiction over this original proceeding. The Nueces Parties argue that by zeroing out the 2018 and 2019 appraisal values for CCL's facility, the Appraisal District has mooted the case. At least, the Nueces Parties argue, the case is not ripe for adjudication because "CCL has not paid taxes to Nueces County for the facility and the facility is still under construction." Resp. to Pet. for Writ of Mandamus at 7. We do not reach these arguments. As we explained in *Occidental*, the Legislature's grant of jurisdiction in Section 72.010 cannot exceed what the Texas Constitution allows. 561 S.W.3d at 154. Article V, Section 3(a) of the Texas Constitution states that "[t]he Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State." TEX. CONST. art. V, § 3(a). Besides the two express limits on the Legislature's power—that jurisdiction can only be to issue writs of quo warranto and mandamus, and not against the Governor—we recognized long ago in *Love v. Wilcox* three other limits inherent in the nature of these writs:

> One is that the right to the duty required to be performed by mandamus shall not be dependent upon the determination of any doubtful question of fact. Another limitation is that the writ of quo warranto or mandamus be a proper or necessary process for enforcement of the right asserted. A third is there must be some strong and special reason for the exercise of this extraordinary original jurisdiction by a court designed primarily as the court for the correction by appellate review of errors of inferior courts in determining questions of law.

5

28 S.W.2d 515, 519 (Tex. 1930) (orig. proceeding) (cleaned up). The third is met "where the proceeding involves questions which are of general public interest and call for a speedy determination." *Id.* (cleaned up). "[T]he remedy of mandamus must be pursued in the lower courts unless it is made plain that urgent necessity calls for the exercise of the original jurisdiction of the Supreme Court." *Id.* at 521.

In *Occidental*, Nueces County argued that factual disputes precluded our exercise of jurisdiction under *Love*'s first limitation. We examined all the ones posited and concluded that no resolution of fact issues was necessary to "resolv[e] the dispositive legal question in the counties' dispute." 561 S.W.3d at 157. Nueces County and San Patricio County were both active parties in *Occidental* and had taken the position that their taxation dispute could be decided on motions for summary judgment in another suit between them. *Id.*

The Nueces Parties argue that three disputed fact issues preclude our exercise of Section 72.010 jurisdiction in this case: (1) whether CCL has been assessed and paid taxes; (2) whether the nature of CCL's facility—especially its size, shape, and location—are so different from Oxy's piers that the rule in *Occidental* does not apply; and (3) whether Nueces County will provide services to the CCL facility (we concluded in *Occidental* that Nueces County would not provide services to Oxy's piers). We see little dispute over what taxes CCL has been assessed and paid. What confusion exists in the parties' short and hurried filings can readily be removed by access to public records. But the parties' disputes over the nature of CCL's facility in relation to the counties' boundary are significant and require resolution. While *Occidental* concluded that "[t]he common law . . . treat[s] docks, piers, and similar permanent facilities" built both on the mainland and the submerged land

6

as being part of the mainland, *id.* at 165, we did not hold that the rule applies to every such structure imaginable. On the contrary, we derived the rule from cases that involved structures similar to Oxy's piers. *See id.* at 163–64. The Nueces Parties argue that CCL's facility is different in ways inconsistent with the rationale for the common law rule. CCL insists that there is no meaningful difference. That is, in part, a factual dispute. So is the nature of the services Nueces County will be obliged to provide CCL.

With respect to *Love*'s third limitation, we concluded in *Occidental* that there was a "strong and special reason"—an "urgent necessity"—for us to exercise "this extraordinary original jurisdiction." *See id.* at 154–55, 159. Oxy had been subject to double taxation for ten years. *Id.* at 153. For almost all of that time, Nueces County and San Patricio County had litigated a suit to resolve their taxation issues, but the suit had dragged on so long that the burden on taxpayers had become intolerable, prompting the enactment of Section 72.010. *Id.* at 152–53; *see also* TEX. LOC. GOV'T CODE § 72.009(a) ("A county may bring suit against an adjacent county to establish the common boundary line."). Other taxpayers were "in the same predicament." *Occidental*, 561 S.W.3d at 153. By passing Section 72.010, the Legislature and Governor indicated that they believed an urgent necessity to end the double taxation existed. *See id.* at 160. In the present proceeding, however, CCL has complained of double taxation for only three years, has paid little under protest, may have some of that refunded, and is not currently being assessed. The parties have the benefit of our analysis in *Occidental*. The counties might yet resolve their differences by agreement, *see* TEX. TAX CODE § 31.112, or through the litigation between them that remains pending.

7

"For at least 125 years, we have assumed and sometimes held that double taxation is forbidden." *Occidental*, 561 S.W.3d at 150 (cleaned up). The burdens Nueces County and San Patricio County have piled on taxpayers for years by their intransigence have precipitated extraordinary legislation to provide a resolution. Nevertheless, in the circumstances before us, we conclude that the Constitution does not permit us to exercise the jurisdiction conferred by Section 72.010 at this time.[4] The problem addressed by the legislation, and the absolute necessity of the counties' resolution of it to the benefit of their taxpayers, remains.

The petition is dismissed without prejudice.

**OPINION DELIVERED**: October 25, 2019

---

[4] Inasmuch as we have ruled within the statute's 90-day deadline, we need not consider the Nueces Parties' argument that the deadline is unconstitutional. *Cf. Occidental*, 561 S.W.3d at 166–68 (Brown, J., concurring).